## IN THE MATTER OF THE BOUNTY CLAIMS OF D. G. FARRAGUT AND THE OFFICERS AND MEN OF THE WESTERN GULF SQUADRON.

1. Head money or bounty is not prize under the law, but a gratuity which the Government has promised to distribute under the direction of the Secretary of the Navy, in the same manner as prize money is distributed.
2. The Act of Congress of 1864, gives to the Secretary of the Navy full authority to distribute under his discretion and without the intervention of the courts, the bounty or head money provided for by that Act. The courts have no jurisdiction to distribute it even with the consent of the Secretary.
3. Section 28 of the Act of 1864, has no application to claims for bounty money, but only to the case of vessels which have been captured and afterwards destroyed or lost or appropriated to the use of the United States, or, in consequence of their condition, not fit to be sent into port.

In Admiralty. No. 191. Before Mr. Justice WYLIE. Decided March 1, 1870.

LIBEL of information to recover bounty or head money under the Act of June 30, 1864.

Messrs. B. F. BUTLER, N. WILSON and J. H. ASHTON for libellants.

Messrs. E. C. CARRINGTON and R. M. CORWINE for the United States.

Mr. Justice WYLIE delivered the opinion of the Court:

This proceeding was instituted on the 31st of December, 1867, by what is called " The libel of information of David G. Farragut, Admiral in the Navy of the United States, who prosecutes herein in behalf of, and in the interest of, himself and the officers and men of the Western Gulf Squadron of the United States Navy, as constituted from the 23d day of April to the 1st day of May, in the year of our Lord, 1862," &c.

The claim is for recovery of bounty claims at the rate of $200 a head for each person on board the rebel vessels of war

which were sunk or otherwise destroyed by said squadron early in the morning of the 23d of April, 1862, in the Mississippi River, about 70 miles below New Orleans, in an engagement whose history is so well known to the country. The claim is based upon the eleventh section of the Act of Congress of June 30, 1864, which is in the following words:

" *And be it further enacted,* That a bounty shall be paid by the United States for each person on board any ship or vessel of war belonging to an enemy at the commencement of an engagement, which shall be sunk or otherwise destroyed in such engagement by any ship or vessel belonging to the United States, or which it may be necessary to destroy in consequence of injuries sustained in action, of $100 if the enemy's vessel was of inferior force, and of $200 if of equal or superior force, to be divided among the officers and crew in the same manner as prize money; and when the actual number of men on board any such vessel cannot be satisfactorily ascertained, it shall be estimated according to the complement allowed to vessels of its class in the Navy of the United States; and there shall be paid as bounty to the captors of any vessel of war captured from an enemy, which they may be instructed to destroy, or which shall be immediately destroyed for the public interest but not in consequence of injuries received in action, fifty dollars for every person who shall be on board at the time of such capture. All ransom money, salvage, bounty or proceeds of condemned property accruing or awarded to any vessel of the Navy, shall be distributed and paid to the officers and men entitled thereto, in the same manner as prize money, under the direction of the Secretary of the Navy."

This section is identical in substance with Section 4 of the Act of July 17, 1862, except that the words " under the direction of the Secretary of the. Navy " are not to be found in the Act of 1862 in connection with this subject.

The thirty-third section of the same act is in these words: "That the provisions of this act shall be applied to all captures

made as prize by authority of the United States, or adopted and ratified by the President of the United States." And the thirty-fourth section provides "that this act shall apply to all prize proceedings now pending."

Prior to the passage of the Act of July 17, 1862, followed by this Act of 1864, the only law which had ever been passed by Congress providing for the payment of a bounty for the destruction of enemy's vessels was the Act of April 23, 1800, the seventh section whereof is in these words:

"That a bounty shall be paid by the United States of $20 for each person on board any ship of an enemy at the commencement of an engagement, which shall be sunk or destroyed by any ship or vessel belonging to the United States of equal or inferior force, the same to be divided among the officers and crew in the same manner as prize money."

I find no decisions under either of these acts on the questions whether they confer jurisdiction in the district courts of the United States over the claims for bounty. The Acts of 1800 and 1862 both declare that the bounty money in question shall "be divided among the officers and crew in the same manner as prize money."

The Act of 1864, under which the present proceeding has been instituted, adds to these words the additional "under the direction of the Secretary of the Navy."

The British Act (55 George III, Chap. 160, Sec. 6) which provides for a similar bounty (which they call head money), requires that the treasurer of his majesty's navy should pay the claims "on bills to be made forth by the commissioners of the navy," and contains many minute directions as to the proofs and vouchers required to support these bills, and then contains the following proviso: "That in any case in which doubts shall arise whether the party or parties claiming head money are entitled thereto, the same shall be summarily determined by the judge of the High Court

of Admiralty, or by the judge of any other court of admiralty, in which the prize shall have been adjudged, subject, nevertheless, to an appeal to the commissioners of appeal in prize causes."

Head money or bounty is not prize under the law, but a gratuity which the Government has promised to distribute under the direction of the Secretary of the Navy in the same manner as prize money is distributed.

The only act which defines what prize shall be, so far as captors are concerned, is the Act of the 23d of April, 1800. The eighth section of this act provides that " the proceeds of all ships and vessels, and the goods taken on board of them, which shall be adjudged good prize, shall, when of equal or superior force to the vessel or vessels making the capture, be the sole property of the captors; and when of inferior force shall be divided equally between the United States and the officers and men making the capture. Until after sentence of condemnation has been passed by a judicial tribunal having jurisdiction, neither the Government nor the captors have title to the proceeds of the captured property."

It is different under our law as to bounty money. It cannot be doubted, I think, that our acts of Congress, especially the Act of 1864, under which the present proceeding has been instituted, have conferred full authority on the Secretary of the Navy to distribute the bounty of the Government without an adjudication of court. It belongs to the Government to give or to withhold; and if it give, to say by what agency and means the money should be distributed. It has given that power to the Secretary of the Navy, and it has not given it to the courts. It is quite true that in several instances during the late rebellion this court did assume jurisdiction over questions of this character, but it was always upon the written request of the Secretary of the Navy, misled, perhaps, to some extent by the example of the prize courts in England, without having

made a sufficiently careful inquiry in regard to the manner by which those courts acquired their authority.

The consent of the Secretary could not confer a jurisdiction not granted to the courts by the law, and as the law declares that the bounty money shall be distributed by the Secretary of the Navy as prize money is distributed amongst the officers and crews, the Secretary would be at perfect liberty to disregard any decision the court might make if such decision were not agreeable to his own opinion.

But the learned and able proctor for the libellant in the present case, relied in his argument very much on the provisions contained in the twenty-eighth section of the Act of 1864, and for that reason I propose to transcribe it fully into this opinion. It is as follows:

SEC. 28. *"And be it further enacted,* That in case of any capture heretofore made, if by reason of its condition, or because the whole has been appropriated to the use of the United States, no part of the captured property has been or can be sent in for adjudication or if the captured property be entirely lost or destroyed proceedings for adjudication may be commenced in any district the Secretary of the Navy may designate. And in any such case the proceeds of anything sold or the value of anything taken or appropriated for the use of the Government shall be deposited with the Assistant Treasurer in or nearest to that district subject to the order of the court in the cause. If, when no property can be sent in for adjudication, the Secretary of the Navy shall not, within three months after any capture, designate a district for the institution of proceedings the captors may institute proceedings for adjudication in any district. And if in any case of capture no proceedings for adjudication shall be commenced within a reasonable time, any parties claiming the captured property may, in any district court, as a court of prize, move for a monition to show cause why such proceedings shall not be commenced or institute an original suit in such court for restitution,

and the monition issued in either case shall be served on the attorney for the United States for the district, and on the Secretary of the Navy, as well as on such other persons as the court shall order to be notified."

This section of the Act appears to have no application to any claim for bounty money, but only to the case of vessels which have been captured first and afterwards destroyed or lost or appropriated to the use of the United States, or in consequence of their condition not fit to be sent into port, and directs how, and when, and where in such cases proceedings may be instituted for condemnation as prize.

The libel in the present case does not aver that any vessel of the enemy was captured by the squadron, nor that any was taken as prize, nor does it contain a prayer for condemnation of any as prize, or for prize money. Its whole scheme and structure, from first to last, are those appropriate only to a claim for bounty money under the eleventh section.

Whether a libel alleging that the destroyed vessels had been captured and were lawful prize, could be maintained by the facts in this case, is perhaps more than doubtful. Bounty or head money it would seem, is all that could be recovered in any cause where the vessel of the enemy had not been captured, but simply destroyed.

It appears to be quite evident that this section has no reference to proceedings to be instituted for that object.

For these reasons, and for these only, am I of opinion that *the libel of information should be dismissed, and it is so ordered.*